## KENNON *v.* STATE.

### (*Jackson*, April Term, 1944.)

Opinion filed June 10, 1944.

416

Dwayne D. Maddox, of Huntingdon, and E. H. Lannom, of Union City, for plaintiff in error.

Nat Tipton, Assistant Attorney-General, for the State.

Mr. Justice Gailor delivered the opinion of the Court.

Plaintiff in error was indicted as an accessory before the fact to the murder of J. R. McCain, which occurred in Obion County on January 28, 1943. The indictment against him charged that he procured Bill Deering, Sam Faulk and Elmer Beeler to commit the murder. Upon the trial a *nolle prosequi* was entered as to Beeler; Faulk was acquitted; Deering was convicted for the homicide of deceased and sentenced to 99 years in the penitentiary.

Plaintiff in error was convicted as an accessory before the fact and likewise sentenced to 99 years. The codefendant Deering did not appeal, but plaintiff in error, after motion for new trial and motion in arrest of judgment were overruled, has appealed and assigned errors.

Plaintiff in error, a man about 53 years of age, operated a restaurant and tourist camp near Reelfoot Lake, which was known as Four Gables. Early in January, 1943, about three weeks before the homicide, Four Gables was burned, and plaintiff in error, therefore, suffered a considerable loss. Rightly or wrongly, he believed that J. R. McCain, the deceased, was responsible for the burning, and therefore, felt very hostile toward him. He undertook to have deceased indicted by the Obion County Grand Jury, and when he failed, was further embittered by that failure.

The State's case against plaintiff in error rests largely upon the testimony of the codefendant Beeler, who testified as a witness for the State, and the testimony of his codefendant Deering, who testified in his own behalf. There were many corroborating circumstances.

There is no dispute that between 8:30 and 9 o'clock on the night of the homicide, Deering, Faulk and Beeler left plaintiff in error's place of business in a car armed with a shotgun, carrying a can of gasoline and a crowbar, which they had procured at the camp of plaintiff in error, and went to the store and home of the deceased. They found deceased sitting at a lighted window reading a paper, and Deering shot him twice through the window with the shotgun. The three men then broke into the store and undertook to set it on fire, but they were unsuccessful in this attempt on account of the concrete floor of the store building. The deceased died a short time after he was shot. The three men then returned to the

place of the plaintiff in error. The shotgun with which the killing had been done was later found in a cesspool behind the house of plaintiff in error and identified as his property. He admitted that he had hidden it there.

 Deering testified positively that plaintiff in error hired him to kill the deceased. This the plaintiff in error denied, but his denial is overcome by certain statements which he is shown to have made to the mother of Deering after the killing. Our reading of the record convinces us beyond reasonable doubt that the plaintiff in error was guilty as charged in the indictment.

Plaintiff in error and his three codefendants were placed on trial together in the Criminal Court of Obion County. As stated, the Attorney General announced the *nolle prosequi* as to the codefendant Beeler. After some other preliminary matters which are immaterial, the selection of the jury was commenced. Eight jurors had been selected, when, on motion of the State, and over the protest of the plaintiff in error, the eight jurors were, with a sworn officer, retired from the court room. Thereafter, as each juror was accepted, he was conducted by a sworn officer to the place where the other eight had been retired. After twelve jurors had been selected and brought back to the court room, the plaintiff in error objected to the swearing of the jury on the ground that they had not been properly selected, since the entire jury had not been in the court room during the selection of its entire membership. He renewed the objection to the action of the court in ordering the retirement of the jurymen as they were accepted, and when this motion was overruled he preserved his exceptions.

At the commencement of the trial the plaintiff in error had made a formal written motion for a severance, and at various times during the course of the trial this motion

was renewed. It was each time overruled by the trial judge and when so overruled plaintiff in error seasonably preserved his exception. The principal original ground for the motion was that the State had procured confessions from certain of the codefendants of plaintiff in error and would use them on the trial, and since plaintiff in error had not been present when the confessions were taken, they were incompetent as to him and would be prejudicial to his rights. To this ground was later added the further ground that the codefendants Faulk and Beeler, who had taken the stand for the State, had been present at all the counsels of the defense and were therefore in a position to disclose to the State, matters prejudicial to the defense of plaintiff in error. As stated, the trial judge overruled these motions for severance, and plaintiff in error not only excepted at the time to the action of the trial judge, but assigned this action of the trial judge for error in motion for new trial.

The two assignments of error on this appeal are, first that the action of the trial judge in permitting the retirement of the jurors as they were selected, constituted reversible error, and second, that the trial judge erred in overruling the motions for a severance.

We shall consider these assignments in order.

As to the first assignment, plaintiff in error admits in his brief that the judge ordered the retirement of the jury because so many of the prospective jurors, on being examined, were unwilling to enforce the death penalty, sought by the State. He says:

"This mainly for the reason that most of the persons being examined as to their competency as jurors were stating that they would not enforce the death penalty in any case."

The jurymen were not during the time of their exclusion from the court room a jury; they had been impanelled and accepted but not sworn. It is not insisted that they did not hear all the testimony and other proceedings that were necessary and proper for them to hear that they might reach a fair and intelligent verdict. So the question narrows itself to this: Can the convicted defendant complain of the fact that all the jurymen did not hear the entire examination of all prospective jurymen on the *voir dire*?

It is stated by plaintiff in error that the reason for the exclusion of the jurymen was that since the State was seeking a death sentence, the Attorney General did not want the accepted jurymen to hear how many of their fellow veniremen were opposed to capital punishment.

Obviously, however, this plaintiff in error was not prejudiced in that regard since the jury refused to impose a death sentence on him and fixed his punishment at 99 years.

█ It is not insisted that opportunity for the outside influence was afforded by the exclusion, since all the accepted jurymen were at all times in the custody and under the supervision of a sworn officer. The jury was reassembled and sworn together as provided in Code, sec. 11748. There is no provision of the Constitution or Statutes that requires that the defendant be given an *advantage* over the State in a criminal prosecution, but only that the defendant have a fair trial. *Woodruff et al.* v. *State*, 164 Tenn., 530, 51 S. W. (2d), 843.

█ It is suggested that the jury must be in custody of two officers, but no authority is cited to support the contention. As an element of a fair and impartial trial plaintiff in error was entitled to have all jurors at all times in the custody of a sworn officer. This right in

Tennessee is not fixed by statute but derives from the Common Law. *Long* v. *State*, 132 Tenn., 649, 179 S. W., 315.

It is clear that the common law requirement is met so long as the jury is in custody of one sworn officer. Wharton's Criminal Procedure (10 Ed.), sec. 1663; 2 Bishop's Criminal Procedure (2 Ed.), section 991; Thompson on Trials (2 Ed.), section 2548; 16 C. J., 1075; 23 C. J. S., Criminal Law, sec. 1353; and the note to 34 A. L. R., 1117.

This Court has frequently held that the mere separation of the jury in groups is not error so long as each group is in custody of an officer. *Sherman* v. *State*, 125 Tenn., 19, 53, 140 S. W., 209; *King* v. *State*, 91 Tenn., 617, 20 S. W., 169.

In one of our early cases the reason for the requirement is thus stated:

''For the law intends, that the verdict shall rest alone on the proof in the case, and be the true and necessary result thereof. It will not, therefore, permit the jurors to be exposed to any foreign influence, to be effected by tampering with them, or advising them as to the state of public opinion, or otherwise impressing their minds as to the verdict they shall render.'' *Wiley* v. *State*, 31 Tenn., 256, 257.

Compare: *Cartwright* v. *State*, 80 Tenn., 620, 625; *Stone* v. *State*, 23 Tenn., 27.

It is not even suggested that in the present case, there was any exposure of any of the jurymen to outside influence, nor that there was any time at which the jury was not in custody of an officer. One officer, under the circumstances here, was as capable of excluding outside influence, or conversation, or threats as two or more officers would have been.

■ Not only do we find no support in reason or authority for the disapproval of this practice, but we feel that in the exercise of a sound discretion, the trial judge may provide for it in many instances to the fairer administration of justice, both for the defendant and the State.

■ The plaintiff in error. makes no specification of prejudice to support the assignment of error and we can find no such prejudice after reviewing the record, so that the first assignment of error must be overruled.

■ ■ As to the second assignment and the refusal of the trial judge to grant a severance, the plaintiff in error makes this frank admission:

"At the outset we concede that the action upon these motions was a matter that rested in the sound discretion of the trial judge, and his ruling will not be disturbed except and unless it appear that he abused such discretion."

It is true that the other three defendants had made confessions which implicated plaintiff in error, but when these confessions were admitted in evidence, the trial judge in each instance, very clearly admonished the jury that the confessions were only competent evidence against the defendant making the confession. Not only did the Court so formally instruct the jury on *application of the attorney for plaintiff in error*, but the record discloses that at the time of the admission of the confessions the rule was stated and restated by the various attorneys and the Court, so that the jury was well aware of the rule, and it is clear that the rights of plaintiff in error were fully protected in that regard.

We think the requirements of law were fully met by the Court's instruction to the jury. *Porter* v. *State*, 177 Tenn., 515, 151 S. W. (2d), 171.

It is insisted by plaintiff in error that he was surprised by the testimony of his codefendant Deering. No attempt, however, was made to impeach that testimony by prior inconsistent statements, and the fact that Deering, testifying in his own behalf, incriminated plaintiff in error, does not render his testimony objectionable.

"Evidence given by a defendant on his own behalf, upon his trial for a criminal charge is competent, and proper for the consideration of the jury, both for and against a co-defendant jointly upon trial." *Richards* v. *State*, 91 Tenn., 723, 20 S. W., 533, 30 Am. St. Rep., 907.

In a recent case where the situation of the parties and the questions presented were almost identical with those before us here, the action of the trial judge in refusing a severance, was affirmed by this Court in an opinion in which it was said:

"Each of the plaintiffs in error moved the trial court for a severance and a trial separate from that of his codefendants. Grounds of the motion were that the State was in possession of written confessions of guilt of each of them, containing statements competent only as against the individual confessor, and also that Woodruff had entered a plea of guilty, which made the issue as to him only one of the degree of guilt and the proper punishment to be imposed.

"On an appeal in the nature of a writ of error, this court does not directly review the exercise of discretion of the trial judge in overruling these motions. But, the motion for a severance having been made and overruled, the inquiry here is whether the joint trial developed prejudice to one or more of the plaintiffs in error, so that the interests of justice require the setting aside of the verdict and the granting of a new trial. . . .

"It may have been to the interest of each that he be tried alone, but the orders of the court are molded to protect rights, and not merely the interests, of persons accused of crime. The state, as well as the persons accused, is entitled to have its rights protected, and when several persons are charged jointly with a single crime, we think the state is entitled to have the fact of guilt determined and punishment assessed in a single trial, unless to do so would unfairly prejudice the rights of the defendants." *Woodruff et al.* v. *State*, 164 Tenn., 530, 538, 539, 51 S. W. (2d), 843, 845.

Compare: *Thompson et al.* v. *State*, 171 Tenn., 156, 171, 101 S. W. (2d), 467.

We find no abuse of discretion by the trial judge in the record before us here, so that the second assignment of error must be overruled and the judgment affirmed.

GREEN, C. J., and CHAMBLISS, NEIL, and PREWITT, JJ., concur.