GERRY SCOTT

*v.*

STATE OF TENNESSEE.

(*Jackson,* April Term, 1960.)

Opinion filed September 9, 1960.

152

W. W. Lackey, Savannah, for Gerry Scott.

Thomas E. Fox, Assistant Attorney General, for the State.

MR. JUSTICE FELTS delivered the opinion of the Court.

Defendant below, Gerry Scott, was convicted of having carnal knowledge of Mildred Scott, his daughter, or his wife's daughter, and sentenced to ten years in the penitentiary.

He appealed in error and insists, first, that the evidence preponderates against the verdict and in favor of his innocence, and that the only evidence of guilt was the testimony of the accomplice, Mildred, which was entirely uncorroborated and, therefore, not adequate to sustain a conviction.

The witnesses for the State were Mildred and her mother, Mrs. Maxine Alvey. Mrs. Alvey, however, had no knowledge of any fact or circumstance tending to prove the charge against defendant. Her testimony dealt with the relationship of the parties and other collateral matters.

Mrs. Alvey testified that, by the time she was 18, she had two illegitimate daughters, Ina Jean and Mildred, by defendant. She said Mildred was born November 17, 1941—a little over two months after her marriage to Walter Jones. She and Jones were divorced in 1948.

In 1950, she married defendant, and she and these two children, Ina Jean and Mildred, and defendant and his son by a former marriage, all lived together as one family for some six years. Then Ina Jean married and went away. In May 1957, this couple had a disagreement. Defendant withdrew the money deposited in their joint bank account, and beat her because, he said, she was running around with other men. On May 16, she left him and went to Memphis.

Mildred continued to live in defendant's home, with him, his son, and some of his other relatives, until July 9, 1957, when he sent her to Memphis to find her mother and try to get her to come back to him. But both remained in Memphis, and her mother got a decree of divorce and alimony against defendant on September 19, 1957, and married Herschel Alvey October 1, 1957.

Mildred and her mother, Mrs. Alvey, moved from Memphis to Arkansas; and their testimony is that Mildred gave birth to a baby March 26, 1958, at Brinkley, Arkansas. It also appears that defendant failed or refused to pay the alimony to Mrs. Alvey; and that she caused this prosecution to be brought against defendant in December 1957, the indictment being returned January 20, 1958.

So, the only direct evidence as to the guilt of defendant is the testimony of Mildred herself. She testified that she had never had sexual relations with anyone but defendant; and he was the father of her child. She said that his last act of sexual intercourse with her was on July 9, 1957, the day she left for Memphis, and "he had had intercourse with me all through the years."

It appeared that while living in defendant's home, she went to school and was in the tenth grade, and her testimony shows that she is alert and perhaps above normal in intelligence. She said that she had been regularly having sexual intercourse with defendant for some three years; that at first "it would be about every two or three weeks then every week the last two years." She was asked: "Q. Did you ever submit to him of your free will? A. After he had whipped me I did."

It appears from her testimony, however, that he whipped her about this matter only once and that after he had whipped her, she did not have sexual relations with him at that time. It appears that he had whipped her one other time, that being because she, with other girls and boys in a car, had gone to a show and had stayed until past midnight. She said that though this sexual intercourse between her and defendant had been regularly taking place "every week" for "the last two years", she had never told her mother or anyone about it.

Defendant vigorously denied that he ever had any sexual intercourse with Mildred. He claims this prosecution is motivated by the mother's desire to force payment by him of the alimony to her. He testified that soon after the decree she called him and threatened that if he did not pay her, "she was going to bring a case against me where I would be put away"; and he put on two other witnesses who testified to similar threats by her.

█ It is a well-settled rule in this state that a defendant cannot be convicted upon the uncorroborated testimony of an accomplice in his crime; and this is true in sex cases even where the accomplice is a child of such tender years as to be incapable of consenting to such crime. *Sherrill v. State,* 204 Tenn., 427, 321 S.W.2d 811, 814-816.

█ If the female consents to the crime of incest, she is an accomplice, and a conviction cannot be had upon her unsupported testimony. But, of course, if she did not voluntarily consent, as in the case of rape, force, threats, fraud or undue influence, she is not an accomplice. *Shelly v. State,* 95 Tenn. 152, 155, 31 S.W. 492, 493, 49 Am.St. Rep. 926.

■ As we have seen, the female in the case before us said she had been regularly having sexual intercourse with defendant *"all through the years"*—*"every week"* for *"the last two years"* (italics ours), and she had never told anyone about this, not even her mother. It seems utterly impossible that such a thing could have happened, unless she acted voluntarily, consented to it, and concealed it. Upon her evidence, we think there is no reasonable doubt that she was an accomplice.

In *Shelly v. State,* supra, the female testified that defendant "began to have intercourse with her in the spring or summer of 1893, and kept it up until about Christmas." It was held that her evidence implied that she consented and she was held an accomplice, so that her uncorroborated testimony was not sufficient to support a conviction.

We find no evidence, testimonial or circumstantial, to corroborate or support the testimony of the complaining female in the case before us. The fact that she gave birth to an illegitimate child "is no proof of the defendant's paternity." *King v. State,* 187 Tenn. 431, 437, 215 S.W. 2d 813, 815.

Defendant insists that the Trial Judge committed reversible error in charging the jury as follows:

"A defendant cannot be convicted on the testimony of an accomplice unless she is corroborated by other evidence which, in itself and without the aid of the testimony of the accomplice tends to connect the defendant with the commission of the offense.

"The evidence of an accomplice should be received with great caution but if the testimony carries convic-

tion, the jury, after careful consideration of all the evidence, are convinced of its truth, they should give it the same effect as would be allowed to that of a witness who is in no respect implicated in the offense.

"The testimony of an accomplice is competent evidence, and the credibility of such an accomplice is for the jury to pass upon as they do upon any other witness who testifies in the case."

Thus, the Judge told the jury the defendant could not be convicted on the testimony of an accomplice unless she is corroborated by other evidence, but then told them that such testimony should be received with great caution "but if the testimony [of the accomplice] carries conviction," if "the jury, after careful consideration of all the evidence, are convinced of its truth [truth of the accomplice's testimony], *they should give it the same effect* as would be allowed that of a witness who is in no respect implicated in the offense." (Italics ours.)

█ The effect of this latter instruction, it seems to us, was to lead the jury to think that they were free to deal with the accomplice's testimony as they would that of any other witness, without regard to the rule of corroboration; that if they believed the accomplice's testimony, they should accept it and base a conviction on it as they would upon that of any witness who was not implicated in the crime. This was, in our opinion, misleading and confusing, and prejudicially erroneous.

Defendant next insists that the Trial Judge committed reversible error in charging the jury as follows:

"The jury are the sole judges of the evidence but cannot disregard the law as given them by the court."

158

■ The complaint is that this charge violated defendant's rights under Article I, section 19 of the Constitution of Tennessee, which in effect makes the jury the judges of the facts and of the law as it applies to the facts.

We think this contention must be sustained, upon the authority of *Dykes v. State,* 201 Tenn. 65, 67, 296 S.W.2d 861, 862, in which we held erroneous an instruction which we think is the same in substance as the one here complained of and which was as follows:

" 'You, Ladies and Gentlemen, are the sole judges of the evidence and the weight to be given to the swearing of each and every witness in the case, but the law you will take as given you by the Court.''

In that case, Mr. Justice Burnett fully reviewed the cases on the question and we could not add anything to what was there said.

For these reasons, the judgment of the Circuit Court is reversed, the verdict is set aside, and the case is remanded for a new trial with the recommendation that if the State cannot adduce evidence to corroborate the accomplice, the Attorney General should nolle the case (*Sherrill v. State,* supra, 204 Tenn. 427, 321 S.W.2d 816).

Reversed and remanded.