HENRY CLAY MONTS and JOHNNIE WEST

*v.*

STATE OF TENNESSEE

379 S.W.2d 34

(*Jackson,* April Term, 1963)

Opinion filed March 5, 1964.

Petition for Rehearing Denied May 8, 1964.

On Second Petition for Rehearing June 4, 1964.

174

MARVIN B. GAMBILL, Memphis, for Monts.

HUGH STANTON, Public Defender, Memphis, for West.

176

GEORGE F. McCANLESS, Attorney General, THOMAS E. Fox, Assistant Attorney General, for the State.

MR. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

Plaintiffs in error, Henry Monts and Johnnie West, along with one Joel Olds were indicted and convicted of murder in the perpetration of a burglary (sec. 39-2402, T.C.A.). Olds was sentenced to 99 years in the State penitentiary. Punishment for Monts and West was fixed by the jury at death by electrocution. Olds did not appeal.

Shortly before 1:00 o'clock on the morning of October 7, 1960, Patrolman Frank Bruno, Jr., was shot and killed while investigating a reported noise at the Ace Sundry Store in Memphis. There were no eyewitnesses to the slaying. However, a subsequent investigation disclosed that the store had been burglarized. Apparently, Bruno was shot when he surprised the burglar or burglars in or about the store. At the time Bruno was shot, his partner, Patrolman Pierini, was parked in the street to the side of the store. He did not witness the events that took place in front of the store; but immediately after the shot that apparently caused the death of Bruno

rang out, he observed and shot at a human figure running away from the front of the store. Because of the darkness, the figure could not be identified. No fingerprints of value were recovered at the store.

In September, 1962, almost two years after Bruno's death, Olds, Monts and West were arrested and charged with the patrolman's murder. At the conclusion of their joint trial, the jury found each of them guilty and sentenced them as outlined above.

The trial of this case lasted 11 days and built a record of over eighteen hundred pages. We do not deem it necessary to detail or summarize all of the evidence connecting these defendants with Bruno's murder; only so much of it as is essential to a full understanding of our treatment of the various assignments of error will be presented. The assignments urged in behalf of Monts will be treated first.

At the defendants' trial, a typed confession signed by the defendant, Monts, was introduced and admitted into evidence. In his confession, Monts admitted participating in the burglary of the Ace Sundry Store, but denied that he fired the shot that killed Bruno. He stated that Olds and he acted as lookouts while West entered the store. (Olds' confession stated that Monts was the one who went into the store.) He further stated that Olds and he left the scene when they heard a loud noise around the front of the store. Other evidence at the trial showed that the burglar or burglars gained admittance to the store by breaking out the glass in the front door. Apparently, this was the noise referred to in the confession.

The defendant, Monts, contends that the trial court erred in admitting his confession on the ground that it was not freely and voluntarily given. He further submits that in the absence of the confession, the circumstantial evidence against him preponderates against the jury's verdict and in favor of his innocence.

When the State attempted to introduce Monts' confession, the jury was excused; and in their absence, the court conducted a preliminary examination to determine whether the confession was admissible. Counsel for the defendant, Monts, attempted to show that the confession was not freely and voluntarily given for two reasons. First, because shortly before making the confession, Monts was told by a police officer that his eighteen year old son had been killed in an automobile accident three or four days prior thereto. Monts testified that this was the first he knew of his son's death. Captain Swann of the Memphis police department admitted that this information was given to the defendant, but, of course, he could not say whether or not Monts had heard of it before then. He did testify that Monts appeared to be disturbed by the news; but that when asked if he was too disturbed to give a statement, he answered in the negative. Monts denied on the stand that he had anything to do with the burglary of the Ace Sundry Store or the murder of Bruno; but he did admit giving a confession and identified the signature on the confession handed him at the preliminary examination as his own. His reason for giving the "false" confession was that he wanted to be by himself in his grief. He said that the "false" story he told in the confession was suggested to him by the recording of Olds' confession which was admittedly played for Monts before he gave his

own confession and by statements about the case made by the police officers present.

In addition counsel for Monts points to the fact that Monts had been without sleep for over 24 hours when he gave the confession. Monts was picked up in Chicago, Illinois, at approximately 11:45 on the night of September 25, 1962. He was returned to Memphis by plane on the 26th, arriving there at approximately 9:00 P.M. After some preliminary discussion, Monts indicated his willingness to give a confession and he commenced to do so at approximately 12:45 A.M. on the 27th. The confession was finished around 2:00 or 3:00 A.M., at which time he was taken to a cell. Monts testified that he had been unable to sleep while in the custody of the Chicago police on the morning of the 26th because he was continually being processed during this period. There was no other testimony concerning the period of time the defendant was in the custody of the Chicago police.

Captain Swann, who was in charge of questioning Monts, testified that no promises or threats were made to Monts in order to induce him to confess. In this, he was substantiated by Monts himself, who testified that all of the police officers who dealt with him during this period were nice to him. Monts also stated that he had been asked if he wanted something to eat when he arrived at the Memphis police station and that the police had given him doughnuts and coffee during the period of questioning that followed. Monts testified that the police intimated that he couldn't see his son's grave until he gave a statement; but there is no corroboration of this in the record and Captain Swann denied making

or hearing such a statement. Monts admitted that the typed confession was given to him for his approval before he signed it, but stated that he merely glanced over it, being preoccupied at the time with the news of his son's death and totally unconcerned with the confession or its contents.

After hearing evidence on this preliminary examination, the trial court ruled that the confession was admissible. The jury was returned to the courtroom whereupon the confession was read to them. They were told by the court that the confession was only admissible as to the defendant, Monts, and that they were not to consider it for any purpose as to the other two defendants who were not present when it was made.

Unless the evidence heard at the preliminary examination preponderates against the court's finding that the confession was freely and voluntarily given, we cannot say that the court erred in admitting it into evidence. *Taylor v. State,* 191 Tenn. 670, 235 S.W.2d 818 (1950). We cannot find such a preponderance. While it was uncontroverted that the defendant Monts had been without sleep for some 24 hours when he gave this confession, this does not, of and by itself, render the confession involuntary and thus inadmissible. There is no suggestion that the police prevented the defendant from sleeping during the whole of this period. On the contrary, it is undisputed that the defendant was enroute to Memphis from Chicago for six or seven hours and that no questioning or harassment was going on during this period. Also there is no suggestion of police brutality or threat of any physical violence at any time during the period the defendant was in custody. And even if

the police were the first to tell the defendant of his son's death, we do not see how this, standing alone, would affect the voluntary character of the confession. While we can appreciate how such news must have shocked and grieved Monts, it does not follow from this that the confession he gave shortly after learning of his son's death was not a free and voluntary act on his part. We are not impressed with the defendant's testimony that he implicated himself in the murder of Patrolman Bruno so that he could be by himself to grieve over the loss of his son. The trial judge obviously did not believe this and we can hardly blame him. It goes without saying that it is difficult to believe that a person would implicate himself in a murder with which he had nothing to do merely to be by himself to grieve over the loss of his son.

■ ■ Since we hold that the trial court was not in error in admitting the confession into evidence, it is clear that the jury had before it ample evidence upon which they might find the defendant, Monts, guilty beyond a reasonable doubt. In any event, we cannot say that the evidence preponderates against the verdict and in favor of the innocence of the accused and this is what we must find in order to reverse a criminal case on its facts. *Cooper v. State,* 123 Tenn. 37, 138 S.W. 826 (1909) ; *Essary v. State,* 210 Tenn. 220, 357 S.W.2d 342 (1962).

■ After Monts' confession was read to the jury, his counsel requested that the jury be permitted to observe a demonstration of the machine upon which the defendant's confession was originally recorded. The court denied this request and it is now submitted that this denial constitutes reversible error.

In making this request, the defendant, Monts, was apparently trying to show that the machine was susceptible to manipulation in order to add credence to his testimony that Captain Swann failed to include, in the written confession, typed from the machine, all of the statements made by Monts. Of course, this evidence addressed itself to the credibility of the confession which had already been admitted into evidence by the trial judge.

In this connection, it should be noted that Captain Swann admitted that the machine was under his exclusive control throughout the entire period of questioning; that he had it within his power to turn the machine off and on as pauses developed in the questioning; that other officers asked the defendant some questions, but that only those questions asked by him and the answers thereto were recorded; and that some of the statements made by the defendant were not recorded. All of this was fully developed on cross-examination of Captain Swann by counsel for the defendant, Monts. A demonstration of the operation of the recording machine could only have tended to unnecessarily extend the length of the trial. In view of the testimony of Captain Swann, such a demonstration would have been merely cumulative evidence of facts already admitted by a witness for the State. Any probative value it might have had was certainly outweighed by the delay it would have occasioned.

The defendant, Monts, also contends that the trial court erred in failing to sever his trial from the trial of the other defendants. It is well settled that the granting of a severance of trial is a matter of discretion with the trial court and unless that discretion is abused,

the action of the trial court will not be disturbed on appeal. *Anderson v. State,* 207 Tenn. 486, 341 S.W.2d 385 (1960) ; *Essary v. State,* supra. It follows from this that the trial court must be given an opportunity to exercise its discretion. This was not done in Monts' case. The record indicates, and counsel for Monts admits, that he did not move for a severance in the trial court. Despite this, he argues that the question is still before this Court because the defendant, Olds, moved for a severance below. He contends that the court's denial of Olds' motion operate as a denial as to him. It would be sufficient to dispose of this argument to say that the motion for severance must be made by the party attempting to raise the question on appeal for the obvious reason that there may be grounds to support the motion as to one of the defendants which are in no way applicable to the other defendant or defendants. But it can be added that even if the motion as to Olds had been granted, this would not have effected a severance of Monts' trial from that of West. In any event, since there is no exercise of discretion before us for review, the assignment is without proper foundation and is therefore overruled.

 Monts further contends that the trial court erred in allowing two witnesses to testify over his objection. One of the witnesses, a police officer, gave no testimony regarding the defendant, Monts. His testimony related exclusively to the arrest of the defendant, Olds, a few days after the murder of Bruno, on a charge of carrying a pistol. The only testimony given by the other witness, a waitress, which related directly to the defendant, Monts, was that she had seen the three defendants together in the cafeteria, where she worked, on a number of occasions. This was the sum total of the testimony

relating to the defendant, Monts, given by these two witnesses. The rest of the testimony elicited from them referred to the defendant, Olds, and this must have been obvious to the jury. The testimony which did concern the defendant, Monts, was relevant. The assignment is without merit.

██ ██ Lastly, the defendant, Monts, contends that the court erred in not allowing him to ask certain questions on cross-examination of two of the State's witnesses. One of these witnesses, Trudy Carroll, underwent a thorough cross-examination by counsel for the other defendants as well as by counsel for Monts. The other instance complained of by the defendant, Monts, occurred during the cross-examination of Captain Swann while he was testifying in connection with the preliminary examination to determine the admissibility of Monts' confession. In both instances, the line of questioning pursued by counsel for Monts was not relevant to any material issue in the lawsuit. This Court has recognized that the right to cross-examine a witness is fundamental, *Davis v. State,* 186 Tenn. 545, 212 S.W.2d 374 (1948); but the exercise of this right is "controlled by the trial judge and his discretion will not ordinarily be disturbed." *Davis v. State,* supra. The questions asked were not relevant. Under the circumstances, there was no abuse of discretion.

We have carefully read the voluminous record in this case and have carefully considered the assignments made in behalf of the defendant, Monts. We can find no error in his case and his conviction is therefore affirmed.

The defendant, West, has submitted ten assignments of error. We think that one of these assignments, dis-

cussed infra, points to a reversible error on the part of the trial judge and for this reason, West's conviction must be reversed and his case remanded for a new trial.

Prior to the court's charge to the jury, the defendant, West, submitted a number of special requests. Included among them were several requests for a charge on the law of circumstantial evidence. The court refused to grant any of the requests and did not otherwise charge the jury on the law of circumstantial evidence.

■ The evidence connecting the defendant, West, with the burglary of the Ace Sundry Store and the murder of Patrolman Bruno was circumstantial in nature with the exception of the testimony of Clarence McCord, who shared a cell in the Shelby County jail with West just prior to the trial of this case. McCord, a convicted felon, testified that West told him that he, West, shot the flashlight out of Bruno's hand and then shot him through the heart. West denied any involvement in the burglary or murder throughout the trial. Thus we are presented with the question of whether the trial court erred in refusing to charge on the law of circumstantial evidence when the evidence against the defendant West, was both circumstantial and direct. We feel that this was reversible error.

■ ■ When the only evidence connecting a defendant with the commission of a crime is circumstantial in nature, the trial court must instruct the jury on the law of circumstantial evidence. This is true regardless of whether the defendant requests such a charge. *Webb v. State*, 140 Tenn. 205, 203 S.W. 955 (1918); *Bishop v. State*, 199 Tenn. 428, 287 S.W.2d 49 (1956). But when the evidence is both circumstantial and direct and the defend-

ant does not request a charge on the law of circumstantial evidence, it is well established that a trial judge does not commit reversible error if he fails to charge on this phase of the law. *Barnards v. State,* 88 Tenn. 183, 12 S.W. 431 (1889) ; *Moon v. State,* 146 Tenn. 319, 242 S.W. 39 (1921) ; *Wooten v. State,* 203 Tenn. 473, 314 S.W.2d 1 (1958) ; *Arterburn v. State,* 208 Tenn. 141, 344 S.W.2d 362 (1961) ; *Gray v. State,* 203 Tenn. 332, 313 S.W.2d 246 (1958).

In each of the five cases last cited, this Court expressly stated, or it otherwise appears from the report of the case, that the defendant failed to request a charge on the law of circumstantial evidence. But with the exception of the Barnards case, which is silent on this point, each of these cases intimate that had a special request been submitted, it would have been error to refuse to give the requested charge. The following language was employed in *Arterburn v. State,* supra:

"It is next contended that the trial judge failed to charge on circumstantial evidence. The defendant made no special request upon this subject and the trial judge cannot be held in error for his failure to charge on circumstantial evidence * * * in the absence of a special request."

In *Wooten v. State,* supra, the direct evidence was, as here, a confession. There was also circumstantial evidence tending to connect the defendant with the offense charged. In that case, this Court said:

"* * * when the trial judge ruled that these confessions, both the judicial and extra-judicial, were admissible in evidence, then those confessions became direct evidence and made it necessary for the defendant to

request an instruction on circumstantial evidence if he desired to have it given.''

To the same effect is the case of *Gray v. State,* supra, where this Court said:

"The rule in *Webb v. State* * * * and approved in *Bishop v. State* * * * is that where the State relies entirely upon circumstantial evidence for a conviction then the trial judge is in error if he does not charge on this fundamental. However, it was noted in *Bishop v. State,* supra, that this is not the rule where there is in the record direct evidence to sustain the contention of the State. *In such a case a special request is necessary.''* (Emphasis added.)

The inescapable conclusion to be drawn from these cases is that when the evidence introduced against the defendant is both circumstantial and direct and the defendant requests a charge on the law of circumstantial evidence, it is reversible error to refuse to give it. We think that this is the rule suggested, if not expressly announced, by the cases we have been discussing and is the rule dictated by reason.

The jury is the sole judge of the credibility of the evidence, whether it be direct or circumstantial. A confession, being direct evidence falls within this rule. While the admissibility of a confession is for the court, its credibility is for the jury. *Wooten v. State,* supra. When a case is grounded on both circumstantial and direct evidence, it is entirely possible that the jury, in the exercise of its function as the sole judge of the credibility of the evidence, may find that the direct evidence is unworthy of belief. If they should so find, then they would be left with only the circumstantial evidence to guide

them in determining whether the defendant is guilty of the offense charged. But without the law of circumstantial evidence before them, how can they be expected to properly evaluate this evidence? The possibility that we have just mentioned makes it imperative that the trial judge instruct the jury on the law of circumstantial evidence. There is little danger that such a charge will confuse the jury if it is accompanied by a charge clearly distinguishing between these two types of evidence.

What we hold today is not meant to abrogate or modify, in any way, the main holding of the five cases cited, i. e., when there is both types of evidence and the defendant does not request a charge on the law of circumstantial evidence, a trial judge does not commit reversible error if he fails to charge on circumstantial evidence. While we recognize that the rationale of the rule we are stating herein would apply with equal force to all cases involving both circumstantial and direct evidence regardless of whether a request is submitted, we are precluded from branding as reversible error the failure to charge on the law of circumstantial evidence when no request is made because of the mandatory provisions of sec. 40-2517, T.C.A. This statute provides, in part, that "[i]f the attorneys on either side desire further instructions given to the jury, they shall write precisely what they desire the judge to say further." We have held that this statute, while mandatory, is not applicable where the omitted charge concerns certain fundamental defenses and that this court will reverse a trial court for its failure to give one of these fundamental charges even though no special request was made at the trial. *Bishop v. State,* supra; *Poe v. State,* 212 Tenn. 413, 370 S.W.2d 488. But this Court has expressed its unwillingness to expand the number of

fundamental defenses. Thus in *Arterburn v. State,* supra, this Court said that an instruction on the rule requiring corroboration of an accomplice was not a fundamental charge such as to dispense with the provisions of sec. 40-2517, T.C.A. In keeping with this announced philosophy, we do not think that the subject matter of a circumstantial evidence charge is fundamental when the State's case is made up of both circumstantial and direct evidence. This being so, we cannot overlook the mandatory provisions of sec. 40-2517, T.C.A. Thus, as we have stated heretofore, the main holding of the Barnards, Moon, Wooten, Arterburn, and Gray cases is not affected by this decision. Therefore, since the defendant, Monts, did not request a charge on the law of circumstantial evidence, his case cannot be reversed because of the failure of the court to charge on the law of circumstantial evidence even though his case also involved both circumstantial and direct evidence.

Since West's case must be remanded for a new trial, we deem it advisable to comment on certain of his other assignments which involve questions that are likely to arise at a new trial.

 The defendant, West, contends that the trial court erred in refusing to grant his request to charge the law regarding the testimony of an accomplice. He argues that this charge should have been given in view of the written confessions of his co-defendants, Olds and Monts, both of which confessions incriminated West in the murder of Officer Bruno; and also in view of the testimony of Trudy Carroll, who was, at the time of the trial, under indictment as an accessory after the fact of this murder.

190

.As far as the confessions of Olds and Monts are concerned, the charge requested was clearly not proper for the reason that these confessions were not introduced or received into evidence as against the defendant, West. The trial judge told the jury on numerous occasions during the course of this trial that these two confessions were not to be considered against West for any purpose. This Court has repeatedly held that when two or more defendants are tried jointly, a confession made by one of them, which confession incriminates one or more of the other defendants, is not rendered inadmissible because of the fact that it was made outside the presence of the other defendant or defendants incriminated therein. Such a confession is admissible under these circumstances; but it is incumbent upon the trial judge to instruct the jury that the confession is only competent evidence against the defendant making it and that it must not be considered by them against any defendant not present when it was made. *Thompson v. State,* 171 Tenn. 156, 101 S.W.2d 467 (1937); *Porter v. State,* 177 Tenn. 515, 151 S.W.2d 171 (1941); *Kennon v. State,* 181 Tenn. 415, 181 S.W.2d 364 (1944); *Kennedy v. State,* 186 Tenn. 310, 210 S.W.2d 132 (1947). Under the circumstances, we must presume that the jury heard the instruction of the court, understood it, and evaluated the confessions in accordance with it. Thus as far as this Court is concerned, the confessions were not introduced into evidence as to West and thus the requested charge was not necessitated by them.

■■■ As far as the testimony of Trudy Carroll is concerned, the defendant, West's contention is equally without merit, but for another reason. It is uncontroverted that at the time of this trial, Trudy Carroll was under indictment as an accessory after the fact of this murder.

This indictment was apparently based on the fact she rendered aid to the defendant, Monts, shortly after the murder of Officer Bruno. But the evidence wholly fails to show that she was a principal in either the robbery of the Ace Sundry Store or the murder of Officer Bruno. Under this state of facts, we do not think that she was an accomplice within the rule requiring that the testimony of an accomplice be corroborated.

 It is well settled in this State, by judicial decision, and in many other American jurisdictions, by statutory enactment, that a defendant cannot be convicted upon the uncorroborated testimony of an accomplice in his crime. *Sherrill v. State,* 204 Tenn. 427, 321 S.W.2d 811 (1959); *Scott v. State,* 207 Tenn. 151, 338 S.W.2d 581 (1960). As to who is an accomplice within this rule is a point upon which the American cases are not in complete harmony. (E. g., see annotation in 53 A.L.R.2d 817). The definition most often found in the cases is the one recited in Wharton's Criminal Evidence (12th Ed.) sec. 448 at page 229: "a person who knowingly, voluntarily, and with common intent with the principal offender unites with him in the commission of the crime." The test generally applied by the courts in this country is whether the alleged accomplice could be indicted for the same offense charged against the defendant. Wharton's Criminal Evidence (12th Ed.) sec. 448 at page 230. *Casone v. State,* 193 Tenn. 303, 246 S.W.2d 22 (1952). There are exceptions to this test such as where the accomplice or participant in the defendant's crime is a child of such tender years as to be incapable of consenting to the crime in which he participates. Corroboration in such a case is required even though under the above test, the child would not be considered an accomplice. *Sherrill v. State,*

supra; *Scott v. State,* supra. But for the most part, the test cited is the one used in determining whether the accomplice rule applies to given testimony.

■ In Tennessee, an accessory after the fact is not subject to indictment for the offense committed by his principal; but rather he is guilty of a separate and distinct offense defined in sec. 39-112, T.C.A. Thus under the generally accepted test, an accessory after the fact could not be considered as an accomplice within the rule requiring that the testimony of an accomplice be corroborated. This appears to be the result reached in all the States that have passed on this question with the exception of Arkansas and Texas. 14 Am. Jur., Criminal Law, sec. 112; 23 C.J.S. Criminal Law sec. 792; *State v. Bowman,* 92 Utah 540, 70 P.2d 458, 111 A.L.R. 1393 (1937); *State v. Phillips,* 18 S.D. 1, 98 N.W. 171 (1904); *State v. Riddell,* 38 R.I. 506, 96 A. 531 (1916); *State v. Umble,* 115 Mo. 452, 22 S.W. 378 (1893); *Levering v. Commonwealth,* 132 Ky. 666, 117 S.W. 253 (1909). Finding no merit in the defendant's contention either as to the confessions of his co-defendants or as to the testimony of Trudy Carroll, it results that the request on this phase of the law was properly denied by the trial court.

■ ■ The defendant, West, also assigns as error the action of the trial court in overruling his objection to certain testimony of Lt. R. A. Cochran and Captain Swann. The statement of Olds as relayed through the testimony of Swann that he wished to be locked up separate from West, that he was afraid for his life, should be excluded at a new trial. The statements made by West to Lt. Cochran which were objected to by counsel for West and assigned as error on this appeal were proper evidence and the assignment with regard to them

is without merit. The statement of Trudy Carroll to Captain Swann regarding the conversation between West and his girl friend, Christine Clark, was also proper.

The judgment of the trial court as to Monts is affirmed. The judgment as to West is reversed and his case is remanded for a new trial consistent with what we have said herein. We see no basis for interfering with the judgment of the trial court as to Monts which as to him will be affirmed and the date of execution fixed for Thursday, June 4, 1964.

WHITE and HOLMES, JUSTICES, concur.

CLEMENT, SPECIAL JUSTICE, and DYER, JUSTICE, not participating.

On Petition for Rehearing.

A petition to rehear has been filed on behalf of Henry Clay Monts.

In his petition, counsel argues that this Court was in error when we said, in our original opinion, that Monts did not request a charge on the law of circumstantial evidence. Counsel directs our attention to his motion for a new trial wherein he alleged that the trial court erred in refusing to grant Monts' special request for a charge on the law of circumstantial evidence. But counsel does not point to any place in the bill of exceptions where this special request can be found. The motion for a new trial cannot supply this information. It is well settled in this State, that a motion for a new trial is nothing but a pleading, and cannot be looked to as establishing facts that it alleges. *Hagood v. State,* 183 Tenn. 49, 190 S.W.2d 1023 (1945); *Hargrove v. State,* 199 Tenn. 25, 281 S.W.2d

692 (1955). The rule is well stated in the case of *Wynn v. State,* 181 Tenn. 325, 181 S.W.2d 332 (1944):

"Error is assigned upon the refusal of the trial judge to give a request. The only evidence that such request was made is a statement to that effect in the motion for a new trial. This is not sufficient, as we have repeatedly held, the motion for a new trial being nothing but a pleading. * * * There is no showing as to a request in the bill of exceptions."

We have diligently searched the bill of exceptions for some evidence that Monts made such a request. We can find none. The only requests in the bill of exceptions are those submitted by Johnnie West and they are actually labeled, "Special Requests on behalf of John West," and are signed by Mr. Stanton, West's trial counsel.

We must deny the petition to rehear for the reasons above stated.

## On Second Petition to Rehear.

Heretofore we denied Monts' petition to rehear because no special requests were presented in writing requesting a charge on circumstantial evidence. We were compelled to reverse the conviction as to West because such requests were in the record and had not been given. Since our denying Monts' petition to rehear for this reason, the Clerk of the Criminal Court of Shelby County has filed with the Clerk of this Court a certificate enclosing a number of copies of special requests that were asked for by Monts on the trial of this case and include the identical proposition we reversed the West case on. For this reason alone the Monts case is likewise reversed and remanded for a new trial.