IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 19, 2014

**STATE OF TENNESSEE v. DAVID PATRICK ARMITAGE**

**Direct Appeal from the Criminal Court for Knox County**
**No. 84503    Steven Sword, Judge**

**No. E2013-02654-CCA-R3-CD - Filed December 10, 2014**

The defendant, David Patrick Armitage, was convicted of aggravated robbery, a Class B felony, and sentenced to twenty years in the Department of Correction. The sentence was to be served consecutively to a previous out-of-state sentence.  On appeal, the defendant raises two issues for review: (1) whether there was sufficient corroboration of an accomplice's testimony with regard to the defendant's identity; and (2) whether the evidence is sufficient to support the conviction.  Following review of the record, we affirm the conviction and sentence as imposed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which CAMILLE R. MCMULLEN, J., and DAVID A. PATTERSON, SP. J., joined.

Keith Lowe, Knoxville, Tennessee, for the appellant, David Patrick Armitage.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Charme Allen, District Attorney General; and Kevin Allen, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Procedural History**

The defendant's conviction in this case is based upon his involvement in the aggravated robbery of Rainbow Rentals Video. The defendant and co-defendant, Jackie Ellis, entered the store wearing masks close to closing time. They pointed guns at Scott Curry, the store clerk, and demanded money from the cash register and the safe. Mr. Curry told the men that there was no safe in the store, but they did get a small amount of cash from the cash register. After threatening Mr. Curry's life, the two men exited the video store.

Once the two were gone, Mr. Curry called the police. He gave them descriptions of the perpetrators, but Mr. Curry could not identify any suspects by name. After Mr. Ellis was arrested on separate robbery charges a few weeks later, the defendant was developed as a possible suspect in this robbery. Both were indicted in 2006, and Mr. Ellis elected to plead guilty and testify against the defendant. However, the defendant chose to leave the state, was subsequently arrested on separate charges, and remained in a Georgia prison until his 2013 trial.

The first witness called at the trial was the victim, Mr. Curry. He testified that in September 2005, he was an employee of Rainbow Rentals Video where he worked the night shift. Mr. Curry also noted that the defendant was a customer of the adult video store.

Mr. Curry testified that he was working on the evening of September 14, 2005, and that, close to closing time, he received a phone call asking what time the store closed. The number was preserved on caller ID and later traced to Ms. Andrea Floyd.

Mr. Curry stated that he was standing behind the counter when he noticed a silver BMW with "LED" lights enter the parking lot of the video store. He observed two masked men, one Caucasian and one African American, enter the store with guns pointed at him. Mr. Curry testified that the pair demanded money, asked where the safe was located, and forced Mr. Curry to open the cash register drawer. After obtaining between thirty and forty dollars, the men left the building.

After the intruders exited, Mr. Curry called police and reported the crime. On that evening, he did not mention the defendant to the police as a possible suspect in the crime. Moreover, he did not specifically state to police that the car was a BMW, although he did mention the LED lights. Some time later, after speaking with Investigator Charles Lee and viewing a photo line-up, Mr. Curry was able to identity the defendant as the Caucasian perpetrator. At trial, Mr. Curry also identified the defendant as one of the robbers.

Defense counsel for the defendant subjected Mr. Curry to rigorous cross-examination.

-2-

In addition to the fact that he had not identified the defendant by name prior to the line-up or designated the car as a BMW, Mr. Curry also acknowledged that he had given height approximations of the perpetrators which might be inaccurate. However, Mr. Curry maintained that it was when he was shown the photo identification line-up that it "clicked" with him that the defendant was one of the perpetrators. He testified that he based the identification of the defendant upon the lesions which were on his face at the time; however, he acknowledged that the perpetrators were masked and that he was unable to see the lesions during the robbery. Mr. Curry denied that he was informed that the defendant's fingerprints were found at the scene. However, he did admit that it was possible that he told a defense investigator that he had been informed of that and based his identification on that fact.

The next witness called was Andrea Floyd, the girlfriend of co-defendant Ellis at the time of the robbery. She testified that the defendant and co-defendant Ellis were spending a lot of time "hanging out" during the fall of 2005. She explained that she did not like the situation because she believed that co-defendant Ellis was cheating on her when he was with the defendant. She verified that the defendant drove a silver BMW. She further acknowledged that sometime in early September of that year, she and co-defendant Ellis had argued, and she went out of town for a few days. She acknowledged it was possible that she was not present on September 14, 2005.

The third witness for the State was co-defendant Ellis. He testified that he had accepted a plea agreement in this case which provided for a six-year sentence. As part of the plea, he agreed to provide testimony against the defendant.

Co-defendant Ellis testified that the robbery was the defendant's idea but that he agreed to participate. Following a fight with Ms. Floyd, he and the defendant, driving the BMW, proceeded to the video store. Co-defendant Ellis testified that both men had their faces covered. He recalled that he was armed with an air soft pistol, a toy gun. He could not specifically recall if the defendant's black gun was real or fake. When questioned by counsel, he admitted that he had previously told investigators that the defendant's weapon had been real; however, he testified that:

> yeah, but like I said, I -back then, I mean, I'm being honest, I mean, I have- I was using drugs, smoking week and stuff like that. So you know what I'm saying, but I know he had like two types of guns. One of them was black, one of them was what you call- but that night I don't think he had a real gun that night.

Co-defendant Ellis verified that, after arriving in the defendant's silver BMW, the pair entered the store, with the defendant going first. He acknowledged that they had the weapons

drawn and pointed them at the clerk. They demanded money and asked where the safe was located. After taking the money from the cash register, they left the premises.

The final State witness was Investigator Charles Lee, who was in charge of the case. He testified that co-defendant Ellis had originally told the police that the defendant was carrying a real weapon when the robbery was committed. Investigator Lee testified that he was unaware of anyone telling Mr. Curry that the defendant's fingerprints had been found at the crime scene, and he testified that prints were not found there. He recalled interviewing co-defendant Ellis during the investigation. According to Investigator Lee, co-defendant Ellis told him that he and the defendant had committed the robbery at Rainbow Rentals Video.

The defense then called Curtis Burkett, a licensed private investigator hired by the defense. He testified that he spoke with Mr. Curry on the telephone during his investigation. He testified that, when questioned why he believed the defendant to be guilty, Mr. Curry stated it was because they had found the defendant's fingerprints at the crime scene. An audio recording of a portion of the conversation supporting Mr. Burkett's testimony was introduced into evidence.

After the jury heard the evidence presented, they convicted the defendant as charged. Following a sentencing hearing, he received an effective sentence of twenty years as a Range II offender. Following the denial of his motion for new trial, the defendant filed the instant timely appeal.

**Analysis**

On appeal, the defendant has raised two challenges to his conviction. First, he contends that the conviction should be vacated because there was not sufficient corroboration of co-defendant Ellis' accomplice testimony regarding the identity of the defendant. Second, the defendant raises a sufficiency challenge to the convicting evidence, specifically the deadly weapon element.

When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Dorantes*, 331 S.W.3d 370, 379 (2011); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "[O]n appeal, the State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." *Dorantes*, 331 S.W.3d at 379 (internal quotation omitted). It is the trier of fact who resolves all questions of witness credibility, the weight and value of the evidence, as well as all factual issues raised by the

evidence. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Reviewing courts should neither re-weigh the evidence nor substitute their own inferences for those drawn by the jury. *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003).

The trial court's approval of the jury's verdict accredits the State's witnesses and resolves all conflicts in the evidence in the State's favor. *State v. Moats*, 906 S.W.2d 431, 433-34 (Tenn. 1995). "Because a guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt, on appeal a defendant bears the burden of showing why the evidence is insufficient to support the conviction." *State v. Thacker*, 164 S.W.3d 208, 221 (Tenn. 2005). These rules apply whether the verdict is predicated upon direct evidence, circumstantial evidence, or a combination of both. *Dorantes*, 331 S.W.3d at 379. In weighing the sufficiency of the evidence, circumstantial and direct evidence are treated the same, and the State is not required to exclude every reasonable hypothesis other than that of guilt. *Id*. at 381.

## I. Corroboration of Accomplice Testimony

First, the defendant argues that the evidence is insufficient to support his conviction because the State failed to introduce evidence which corroborated the testimony of co-defendant Ellis. He contends that there was not sufficient corroboration of Ellis' testimony with regard to the defendant's identity and that the conviction should be vacated. The defendant states in his brief that "there is no corroborating evidence which identifies the [defendant] as a person who entered the business in question" and completed a robbery. His argument for this issue is based completely upon an attack of the weight and credibility of the testimony of Mr. Curry, whom the defendant contends provided the only possible evidence which would corroborate co-defendant Ellis' testimony. He finds fault with the fact that Mr. Curry was unable to identify the defendant until after he viewed a photo line-up. The defendant also contends that Mr. Curry identified him from lesions on his face in the line-up, but he admitted at trial that he could not see those lesions at the time of the robbery. Based upon these assertions, the defendant contends that no reasonable juror could have relied upon Mr. Curry's testimony as corroboration.

At the motion for new trial hearing, the court addressed this issue and made the following findings before issuing its denial:

> . . . First, dealing with the issue of the sufficiency of the evidence. The Court ruled as a late juror and found that the weight of the evidence did support the jury's findings, and that a reasonable juror could find that the defendant was guilty of these offenses based upon primarily the testimony of Mr. Curry who testified that he recognized the defendant as a prior customer

in the store, that he recognized this car, that the defendant had worked as a mechanic some and would have multiple cars, and he also said he recognized him by his face. [Trial counsel] did an excellent job on cross-examination challenging Mr. Curry's identification because the facial scars that after intensive cross-examination Mr. Curry finally admitted that that part was covered by the ski mask of the person committing the robbery.

However, Mr. Curry was - was adamant about his identification of [the defendant], never wavered from that, and didn't - whether or not he said it earlier, he certainly said it in trial that he recognized the car as one the defendant had been driving, and as the [S]tate pointed out, it was a - matched the description of a car that the defendant was subsequently apprehended in. And so I think Mr. Curry's testimony was sufficient to go to the identity to corroborate Mr. Ellis' testimony that he, [the defendant] is the person who committed this offense along with Mr. Ellis, and so I think the evidence is sufficient.

The defendant is correct that, when the only proof of a crime is the uncorroborated testimony of one or more accomplices, then the evidence is insufficient to sustain a conviction as a matter of law. *State v. Collier*, 411 S.W.3d 886, 894 (Tenn. 2013) (citing *State v. Little*, 402 S.W.3d 202, 211-12 (Tenn. 2013)). Additionally, accomplices cannot corroborate each other. *State v. Boxley,* 76 S.W.3d 381. 386 (Tenn Crim. App. 2001). This court has defined the term "accomplice" to mean "one who knowingly, voluntarily, and with common intent with the principal unites in the commission of a crime." *State v. Allen*, 976 S.W.2d 661,666 (Tenn. Crim. App. 1997); *see also Clapp v. State*, 30 S.W. 214, 216 (Tenn. 1995). The test for whether a witness qualifies as an accomplice is "whether the alleged accomplice could be indicted for the same offense charged against the defendant." *Id*. (quoting *Monts v. State*, 379 S.W.2d 34, 43 (Tenn. 1964)).

Although a defendant cannot be convicted solely upon the uncorroborated testimony of an accomplice, our supreme court has noted that the corroboration required can be slight. The court stated that in order to properly corroborate accomplice testimony:

[t]here must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. The corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and

legitimately tends to connect the defendant with the commission of the crime charges. It is not necessary that the corroboration extend to every part of the accomplice's [testimony].

*State v. Shaw,* 37 S.W.3d 900. 903 (Tenn. 2001) (quoting *State v. Bigbee*, 885 S.W.2d 797, 803 (Tenn. 1994).

Moreover, independent evidence, although slight and entitled to little weight when standing alone, is sufficient to corroborate accomplice testimony. *State v. Heflin*, 15 S.W.3d 519, 524 (Tenn. Crim. App. 1999). However, evidence that merely casts suspicion on the accused is inadequate to corroborate an accomplice's testimony. *Boxley*, 76 S.W.3d at 387 (citations omitted). The sufficiency of the corroboration is a determination entrusted to the jury as the trier of fact. *Shaw*, 37 S.W.3d at 903.

While the defendant is correct in his statement of the law, his argument regarding Mr. Curry is erroneous, as the trial court determined. The defendant's argument is essentially a credibility challenge against the testimony of Mr. Curry. The defendant does not dispute that Mr. Curry identified him in court and in a photo line-up as one of the perpetrators of the crime. That alone is sufficient to corroborate the testimony of the co-defendant. However, Mr. Curry also testified that he knew the defendant as a customer of the store and accurately described the BMW that the defendant drove, which was used in the robbery

Again, the defendant's argument merely focuses on the reliability of Mr. Curry's testimony. Again, he specifically faults Mr. Curry for his late identification, as well as reliance upon lesions which were not visible during the robbery. However, that same argument was made to the jury following a rigorous cross-examination by trial counsel. After hearing all of that evidence, the jury chose to accredit the testimony of Mr. Curry and the other State witnesses. As we have stated on numerous occasions, it is not the function of this court to reweigh or re-evaluate credibility determinations made by the trier of fact. *Pappas*, 754 S.W.2d at 623. It is the jury as the trier of fact who is best situated to make those type of determinations.

Thus, there is a positive identification by the victim which corroborates the testimony of the accomplice, co-defendant Ellis. Again, that alone would be more than sufficient corroboration. However, in this case, other evidence corroborates the testimony. Ms. Floyd's testimony provided corroboration in that she placed the defendant and co-defendant Ellis together around the time of the crime in the same BMW. Finally, there was testimony that the two men were stopped by police in the same car a few nights following the robbery.

The defendant has simply failed to establish on this record that there was insufficient

corroboration of the accomplice's testimony. As such, he is entitled to no relief.

## II. Sufficiency of the Evidence

The defendant also challenges the conviction on general sufficiency grounds. He was convicted of aggravated robbery, which is "the intentional or knowing theft of property from the person of another by violence or putting the person in fear[]" and is: "1) accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon; or (2) where the victim suffers serious bodily injury." T.C.A §§ 40-13-401(a); -402(a)(1)-(2) (2010).

The defendant's entire challenge to the sufficiency of the evidence is based upon his assertion that the State failed to prove beyond a reasonable doubt that the crime was accomplished with a deadly weapon as opposed to a toy or fake gun. The defendant acknowledges that, pursuant to the statute itself, accomplishment of the crime with either an actual or a fake deadly weapon would be sufficient. However, his argument here is based upon the wording of the presentment. It states as follows:

> that [the defendant] . . . on or about the 14th day of September, 2005, in the State and County aforesaid, did unlawfully, knowingly, by putting Scott Curry in fear take from the person of Scott Curry, an employee of Rainbow Rentals, a quantity of good and lawful money of the United States of America, the further kinds, types, descriptions and denominations thereof to the Grand Jurors unknown, said taking *accomplished with a deadly weapon* in violation of T.C.A. 39-13-402, and against the peace and dignity of the State of Tennessee.

(emphasis added). The defendant argues that because the State chose to use the words "deadly weapon in the presentment, evidence that the defendant accomplished the robbery with an article which lead the victim to believe it was a deadly weapon is not sufficient to support the conviction.

The defendant further argues that the proof in this case does in fact show that he did not accomplish the robbery with an actual deadly weapon. He supports this contention by pointing us to the testimony of co-defendant Ellis at trial that he used a fake gun during the robbery. The defendant also points to co-defendant Ellis' testimony that he thought the defendant was in possession of a fake gun as well. The defendant also points to co-defendant Ellis' statements that he was on drugs at the time of the crime and did not clearly recall the event, but he believed the defendant possessed a fake gun during the robbery

Review of the evidence in the record reveals that the defendant's argument is misplaced. Even assuming that the defendant is correct in his contention that the State was precluded from establishing the crime by showing accomplishment with a fake gun, the record supports the conclusion that the defendant possessed an actual deadly weapon. Thus, the evidence is sufficient.

We do agree that at the trial, co-defendant Ellis made some confusing statements regarding whether the guns employed were in fact real or fake. We agree that he went so far as to testify that he had been on drugs and believed that the defendant's gun was not real. However, closer in time to the event, when he gave his statement to police, co-defendant Ellis stated that the defendant's gun was real. Again, the jury, as finders of credibility, obviously chose to accredit that statement, which is sufficient to support the element. *See State v. Tuttle*, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995). Additionally, the victim offered testimony that guns were used in the robbery.

As such, we must conclude that the evidence, in the light most favorable to the State, was sufficient to support the conviction. The victim identified the defendant as one of the perpetrators who entered the store, held him at gun point, and took money from the cash register. The co-defendant testified that he and the defendant committed this robbery together. Co-defendant Ellis' girlfriend gave testimony that the two men were often together during this time frame. Taken together, this evidence is sufficient to convict the petitioner of the crime. He is entitled to no relief from this conviction.

## CONCLUSION

Based upon the foregoing, the judgment of the trial court is affirmed.

_____

JOHN EVERETT WILLIAMS, JUDGE

-9-