IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

NOVEMBER 1998 SESSION

FILED

February 10, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | NO. 01C01-9801-CC-00044 |
| Appellee, | ) | |
| | ) | LINCOLN COUNTY |
| VS. | ) | |
| | ) | HON. CHARLES LEE, |
| JEFFERY EARL HOLDER, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Aggravated Child Abuse) |

FOR THE APPELLANT:

N. ANDY MYRICK, JR.
116 W. Market Street
Fayetteville, TN 37334

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

DARYL J. BRAND
Assistant Attorney General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN 37243-0493

W. MICHAEL McCOWN
District Attorney General

WEAKLEY E. BARNARD
Assistant District Attorney General
Marshall County Courthouse
Room 407
Lewisburg, TN 37091

OPINION FILED: _____

AFFIRMED

JOE G. RILEY,
JUDGE

**OPINION**

The defendant, Jeffery Earl Holder, appeals as of right his conviction by a Lincoln County jury of aggravated abuse of a child six years of age or less. He was sentenced as a Range I, standard offender to twenty-five years incarceration for this Class A felony. On appeal, the defendant raises the following issues:

1. Whether the trial court erred in failing to suppress his sworn statement to the police;

2. Whether the trial court erred in admitting photographs of the victim's injuries;

3. Whether the evidence is sufficient to support the verdict; and

4. Whether his sentence is excessive.

Upon our review of the record, the judgment of the trial court is AFFIRMED.

**FACTS**

At approximately 8:00 on Saturday evening, November 2, 1996, the defendant staged a one car "accident" to account for serious head injuries which had been inflicted on his five-month-old daughter (hereinafter referred to as "victim"). The defendant drove his car off the road and into a ditch with the victim strapped into a car seat in the back. There were no other passengers in the defendant's car. The "accident" occurred in Hazel Green, Alabama, not far from defendant's residence in Lincoln County, Tennessee.

Paramedic Jerry Burgess arrived at the scene. He saw no skid marks but found the victim in the car. He described her condition as "blue and [she] didn't appear to be breathing" and appeared to have suffered head trauma. Because of the seriousness of her condition, she was flown by helicopter from the scene of the accident to the hospital in Huntsville, Alabama. The defendant was taken to the hospital by ambulance.

At the scene, defendant told Thomas Glenn Taylor, Jr., an Alabama state

2

trooper, that he had fallen asleep at the wheel and run off the road. Like Burgess, Taylor saw no skid marks.

Rony Najjar, a trauma surgeon, treated the victim upon her arrival at the hospital. Her condition was critical, and her injuries life-threatening. His "examination of the child revealed what appeared to be a severe trauma to the head, with multiple bruises in the head region and the face area and the bridge of the nose, the front of the head, the side of the head, especially the right side." It was "unlikely" that these injuries had been caused by a single drop.

Mark Weeks, a family practice physician, treated the victim nine times from December 1996 through April 1997. He testified that the head injuries had caused damage to the left arm and hand. He further testified that her speech and vision would be affected in the future, that there was a possibility that her ability to walk would be affected, that retardation was possible, and that her ability to ever hold a permanent job was "[v]ery unlikely."

Tennessee Bureau of Investigation ("TBI") Special Agent, Donna Pence, testified that she arrived at the hospital at approximately 2:30 a.m. on the night of the accident. She observed the child and then met with the defendant and advised him of his rights. He signed a rights waiver form and told her that he was sleepy and groggy while driving and had the accident. Shortly thereafter, Agent Pence overheard the defendant tell his wife, Sheila Holder, that he had gotten dizzy at home and accidentally dropped the baby on the floor. In the course of their discussions, defendant agreed to participate in later questioning at TBI headquarters.

Defendant's car was impounded after the wreck, so the Holders did not have a way home. Officer Joyce McConnell had driven to the hospital with Agent Pence. The officers offered the Holders a ride which they accepted. They arrived home at approximately 6:30 a.m. Pence and McConnell returned to the Holder residence at 8:45 a.m. the same morning to take them to TBI headquarters for additional questioning. When no one responded to their knocks, they left. They returned twice at about 9:30 and at 11:30 a.m. before the

3

Holders answered the door. Defendant indicated he was still willing to cooperate.

The four drove to TBI headquarters in Nashville and arrived at about 2:00 p.m. Sunday afternoon, November 3, 1996. Defendant was again advised of his rights. He signed a second rights waiver and gave a sworn statement to Agent Pence at 5:30 p.m. on November 3, 1996, in which he admitted his guilt and described hitting his daughter several times with his fist. In the statement, defendant explained that he "freaked" when he saw her head swelling and worried about how to explain her injuries. He put her in the car and went to pick up his wife when he decided to stage the accident.

Court transportation officer, Jeff Miller, testified that while driving the defendant, defendant said he had taken "acid" and saw "bugs and monsters on the child" and began beating them off of her. Defendant gave the same explanation to Sheila Holder on one occasion and in two letters he wrote: one to her and one to her lawyer.

The defendant did not testify at trial but put on two neighbors who testified that they never saw defendant abuse the baby. He also introduced two letters written by Sheila Holder in which she took responsibility for the victim's injuries. Holder testified she wrote the letters only to help the defendant. She denied at trial that she inflicted the injuries.

## MOTION TO SUPPRESS

In his first issue the defendant contends that his written statement should have been suppressed because he had been deprived of sleep, was in a state of shock, and had just failed a polygraph test.[1] In other words, he complains that his physical state was such that he did not knowingly and voluntarily waive his rights before confessing. At the suppression hearing, Agents Pence and Smith both testified as well as Officer McConnell. According to all three of these

---

[1] Testimony regarding the polygraph test was admitted in the course of the suppression hearing but not at trial.

4

witnesses, the defendant did not appear to be in shock, did not complain about his alleged lack of sleep, and did not appear to be under the influence of drugs or alcohol. Sheila Holder testified at the suppression hearing that, on their way home from TBI headquarters after the polygraph, the defendant was conversant and she had no problems talking with him. The trial court denied the defendant's motion to suppress, finding as follows:

> Those persons who had direct observations of the Defendant testified that he did not appear to be sleepy or inattentive. Probably the person who could testify most accurately about any abnormalities to be observed in the Defendant, being his wife, testified that she had no difficulties communicating with him.

> The atmosphere that the Defendant was placed in is not one of a coercive nature. There's no evidence that he was locked away. He went to the [TBI headquarters] voluntarily. The proof is just not there.

"[A] trial court's findings of fact in a suppression hearing will be upheld [on appeal] unless the evidence preponderates otherwise." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Questions regarding the witnesses' credibility, the weight and value of the evidence, and resolution of conflicts in the evidence are all matters entrusted to the trial court. Id. The party prevailing on the suppression motion is entitled to the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom. Id.

While the record supports the inference that the defendant did not have much sleep during the twenty-four hours preceding his sworn statement, this alone is not determinative. See Monts v. State, 214 Tenn. 171, 379 S.W.2d 34, 38 (1964). At issue is whether the confession was voluntary, and the circumstances of each case must be examined. State v. Smith, 933 S.W.2d 450, 455 (Tenn. 1996). The evidence does not preponderate against the findings of the trial court relating to the voluntariness of the confession.

This issue is without merit.

## PHOTOGRAPHS

The defendant next contends that the trial court erred in admitting into

5

evidence three photographs of the victim taken on the Monday morning following her admission to the hospital. Each of the photographs depicts the injuries to the child's head. Upon the defendant's objection to their admission, the trial court acknowledged that the photographs were "potentially inflammatory," but continued, "[h]owever, there is no other way to get an accurate description other than the picture or photographic depiction of the bruises to the front of the child." The court then specifically ruled that the probative value of the photographs outweighed their prejudicial effect, while requiring the state to choose one of two particular photographs which showed essentially the same view.

The defendant argues that the trial court erred because "the probative value of the [admitted] photographs is slight compared to the extremely prejudicial effect [they] would have on the jury." He claims the photographs were unnecessary in light of Dr. Najjar's testimony about the injuries.

Under our rules of evidence, relevant proof may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice . . . or by considerations of . . . needless presentation of cumulative evidence." Tenn. R. Evid. 403. The determination of admissibility is left to the sound discretion of the trial court and this Court will not disturb that determination absent a clear showing of abuse of discretion. State v. Banks, 564 S.W.2d 947, 949 (Tenn. 1978). The mere fact that the subject of the photographs could be described in words does not render them inadmissible. See Collins v. State, 506 S.W.2d 179, 185 (Tenn. Crim. App. 1973).

This Court has reviewed the photographs admitted at trial and agrees with the trial court's ruling. There is no clear abuse of discretion. This issue is without merit.


## SUFFICIENCY OF THE EVIDENCE

The defendant also contends that the evidence is insufficient to support his conviction. A defendant challenging the sufficiency of the proof has the burden of illustrating why the evidence is insufficient. State v. Tuggle, 639

6

S.W.2d 913, 914 (Tenn. 1982). When a defendant challenges the sufficiency of the convicting evidence, we review the evidence in the light most favorable to the prosecution to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). We do not reweigh or re-evaluate the evidence and are required to afford the state the strongest legitimate view of the proof contained in the record as well as all reasonable and legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Questions concerning the credibility of witnesses, the weight and value to be given to the evidence, as well as factual issues raised by the evidence are resolved by the trier of fact, not this Court. Id. A guilty verdict rendered by the jury and approved by the trial judge accredits the testimony of the witnesses for the state, and a presumption of guilt replaces the presumption of innocence. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

The defendant was convicted of aggravated abuse of a child six years of age or less. That offense is committed when a person "knowingly, other than by accidental means, treats a child [six years of age or less] in such a manner as to inflict injury" and the "abuse results in serious bodily injury to the child." Tenn. Code Ann. §§ 39-15-401(a); 402(a)(1) (Supp. 1996). The evidence in this case is more than sufficient to support the jury's verdict.

While the defendant argues that Sheila Holder confessed to the crime, the jury chose to believe the defendant's confession. The jury was entitled to do so, and we will not disturb its decision. This issue has no merit.

**SENTENCING**

Finally, the defendant complains that his sentence is excessive. The defendant was convicted of a Class A felony. *See* Tenn. Code Ann. § 39-15-402(b) (Supp. 1996). As a standard offender, defendant was subject to a Range I sentence of fifteen to twenty-five years. *See* Tenn. Code Ann. § 40-35-112(a).

7

The trial court imposed the maximum sentence of twenty-five years. Because the defendant committed the offense of aggravated child abuse, he must serve one hundred percent of his sentence, less sentence credits earned and retained. *See* Tenn. Code Ann. § 40-35-501(i).

In imposing sentence, the trial court found no applicable mitigating factors and six applicable enhancement factors. The defendant argues that the trial court incorrectly applied one of the enhancement factors and should have mitigated his sentence based on his background.

When a defendant complains of his or her sentence, we must conduct a *de novo* review with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The appealing party bears the burden of showing that the sentence is improper. Id.

The presumptive sentence for a Class A felony is the midpoint of the range. Tenn. Code Ann. § 40-35-210(c). If there are enhancing and mitigating factors, the court must start at the presumptive sentence in the range and enhance the sentence as appropriate for the enhancement factors and then reduce the sentence within the range as appropriate for the mitigating factors. Tenn. Code Ann. § 40-35-210(e). If there are no mitigating factors, the court may set the sentence above the presumptive sentence but still within the range. Tenn. Code Ann. § 40-35-210(d). The weight to be given each factor is left to the sound discretion of the trial judge. State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

The defendant testified at his sentencing hearing that he was abused as a child; lived in foster homes; and eventually lived on the street. Contrary to the defendant's argument, the trial court did consider this testimony and specifically found that it did not "rise to the level of a mitigating factor." We agree. This issue has no merit.

8

As to enhancement factors, the trial court applied the following:

> (1)  The defendant has a previous history of criminal convictions in addition to those necessary to establish the appropriate range;
>
> (4)  The victim was particularly vulnerable because of her age;
>
> (6)  The personal injuries inflicted upon the victim were particularly great;
>
> (8)  The defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community;
>
> (15)  The defendant abused a position of private trust; and
>
> (18)  The victim suffered permanent impairment of either physical or mental functions as a result of the abuse.

*See* Tenn. Code Ann. § 40-35-114.  The defendant only contends that the trial court erred in finding that the victim was particularly vulnerable because of her age, arguing that this factor is an essential element of the offense.[2]

When defendant made this same argument at the sentencing hearing, the trial court responded:

> Age is an element of the offense, but it's not the age that one must look at, but whether, because of the age, the [victim] was particularly vulnerable.
>
> In this case, the testimony was that this child was a five-month-old child; could not escape her attacker; could not even tell anyone about the abuse that she had been subjected to.  And because of her age, she was particularly vulnerable in her inability to communicate to those around her that she was the subject of this abuse. . . .

We agree with the trial court that, under the circumstances of this case, the enhancement factor applies.  *See* State v. Walton, 958 S.W.2d 724, 729 (Tenn. 1997) (even where the child's age is an essential element of the offense, the "particularly vulnerable" factor may be applied where, because of the child's age, he or she was incapable of resisting, summoning help, or testifying against the perpetrator).

---

[2]Because the victim was less than six years old, the offense is elevated from a Class B felony to a Class A felony. *See* Tenn. Code Ann. § 39-15-402(b) (Supp. 1996).

The defendant has failed to demonstrate that his sentence is improper. This issue has no merit.

## CONCLUSION

Based upon the foregoing, the judgment of the trial court is AFFIRMED.


_____
**JOE G. RILEY, JUDGE**


**CONCUR:**


(Not Participating)_____
**PAUL G. SUMMERS, JUDGE**


_____
**L. T. LAFFERTY, SENIOR JUDGE**