**STATE of Tennessee, Appellee,**

**v.**

**Charles Bennie WATKINS, Appellant–Defendant.**

Court of Criminal Appeals of Tennessee, at Jackson.

May 4, 1988.

Petition to Appeal Denied by Supreme Court July 25, 1988.

Mike Mosier, Henderson, for appellant-defendant.

W.J. Michael Cody, Atty. Gen., Norma Crippen Ballard, Asst. Atty. Gen., Nashville, Clayburn Peeples, Dist. Atty. Gen., A.H. Schoonover, Asst. Dist. Atty. Gen., Trenton, for appellee.

## OPINION

DUNCAN, Presiding Judge.

The defendant, Charles Bennie Watkins, was convicted of rape and incest. He received a Range I sentence of ten (10) years for each offense, the sentences to be served concurrently.

In this appeal, the defendant contests the evidence, says certain evidence was improperly admitted, and claims error in the denial of certain special requests for instructions. For the reasons stated in this opinion, we reverse the defendant's conviction of rape and affirm his conviction of incest.

The victim in this case was the defendant's seventeen-year-old daughter.

According to the victim's direct testimony, on the morning of May 29, 1986, she was at home with the defendant, her natural father. No one else was at home at the time. She was in the kitchen "fixing some breakfast." The defendant came in the kitchen. When asked if he took her out of the kitchen, the victim responded, "[m]y room." Further, she testified that he "touched" her, took her "pajamas off," then took off his own clothes and had sex with her. After he accomplished the act, the defendant asked her "how it felt." She stated that his "private parts" penetrated her "private parts."

Additionally, the victim testified that shortly after the event, she went to a friend's house. Her friend called the police, and thereafter she talked to Officer Harold Pinkley, telling him "basically" the same thing she had testified about, but thought she "remembered more then because it took longer."

On cross-examination, the following colloquy took place between defense counsel and the victim:

Q. Now, what were you doing in the Kitchen?

A. Cooking some sausage.

Q. Is that when your father came in there?

A. Yes.

Q. What, if anything, did he say to you?

A. I don't—remember if he said anything. I don't remember him saying anything.

Q. Now, did he touch you?

A. Yes.

Q. How long did this activity in the kitchen go on?

A. I—don't remember. I don't know.

Q. Well, was it as long as five minutes?

A. I don't know. It was until he took me to my room. I don't know—how long.

Q. I'm a little bit uncertain about what you said here. Maybe you can help me get this cleared up. Did your father not say anything, or did he say something and you don't recall it?

A. I don't remember him saying anything.

Q. Okay. Did you say anything to him?

A. I don't remember saying anything to him.

Q. Do you recall ever asking what he was doing or why he was doing this?

A. No.

Q. Now, how did he get you from the kitchen to your room?

A. Just—guided me.

Q. Did he use any force?

A. No, I don't—he just—guided me.

Q. Did he make any threats to you?

A. No.

Q. Did he use any obscene words?

A. I don't remember him saying anything.

Q. Did you not resist?

A. No.

Q. Why?

A. Because I was—used to it. He—.

. . . .

Q. Jenny, while you and your father were in the bedroom did he say anything to you?

A. Only thing I can remember is he asked me how it felt.

Q. While you were in the bedroom, did he use any force?

A. No.

Q. Did he make any threats to you?

A. No.

Q. Why did you go in the bedroom with him?

A. I didn't know what else to do.

Donnie Thomas, the defendant's employer, testified that he visited the defendant at the jail the day after his arrest. The defendant admitted to him that he had sexual relations with his daughter. The defendant told him he was "going to teach her what could happen to her by going out with men, or stuff," and that "undoubtedly," he "just got carried away." The defendant told Thomas that he wished he could "just back things up . . . it's hard to back things up once it happens."

Detective John Paul Seavers testified that he took a statement from the victim about the event. The defendant's objection to parts of the statement was overruled. Detective Seavers was then permitted to read in full the transcribed statement. The statement essentially corroborated the same things that the victim had mentioned in her testimony; however, the statement went further and included many things that were entirely outside the scope of the victim's trial testimony.

For instance, according to the contents of the victim's statement, the defendant touched her "between the legs" while they were in the kitchen; the defendant "pushed" her "next to him," and she "pushed him away"; after the defendant told her "to kiss him on the cheek," she did, and subsequently, he "guided" her into the bedroom; the defendant "kindly pushed" her "a little bit, not hard"; the defendant put her hand on his penis and "put himself inside of her"; then the defendant asked her if she "wanted him to put it in," but she "didn't say anything," as "he was al-

ready in"; the defendant had "never done it all the way like that . . . just touched me, and stuff like that"; and that the defendant had sexually molested her by touching and feeling "at least" ten or fifteen times before the present occasion.

Other evidence showed that a chemical test on a sheet from the victim's bed revealed the presence of a component of semen, but this component is also found in vaginal and other body fluids. Also a test was conducted on a vaginal slide and the victim's panties and pajamas, but no spermatozoa were present.

The defendant testified and denied that he sexually molested his daughter. He stated that he was being falsely accused, indicating that his daughter was angry with him for not buying her a car. He also believed that her motive in falsely accusing him could have been because she thought he might have caught her smoking, or that it might have something to do with a "divorce deal."[1] Further, the defendant denied telling Donnie Thomas that he committed the crime. He told Thomas he was not guilty, and in his conversation with Thomas when Thomas mentioned "sexual relations," he thought that term related to parents teaching their kids about sex. The defendant said that after he was arrested, the detective told him he was accused of rape and may have told him he was also accused of incest, but "[t]he rape was what shocked me so much."

■ After a thorough review of the competent evidence in this case, we find that the evidence clearly shows that the defendant had sexual intercourse with his seventeen-year-old daughter. The victim testified that the defendant did have sexual intercourse with her on this occasion, and Donnie Thomas testified that the defendant admitted to him that he did so. The jury accredited the testimony of these witnesses. This evidence, along with other competent evidence in the case unquestionably authorized the jury to find the defendant's guilt of incest beyond a reasonable doubt.

However, we cannot say the same thing about the defendant's rape convictions.

■ The defendant argues that the State failed to prove that he used "force or coercion" to accomplish the act of rape. We agree.

T.C.A. § 39–2–604 (1982) provides, in part:

(a) Rape is unlawful sexual penetration of another accompanied by any of the following circumstances:

(1) Force or coercion is used to accomplish the act;

. . . .

For purposes of T.C.A. § 39–2–604(a)(1): "Coercion" means threat of kidnapping, extortion, force or violence to be performed immediately or in the future or the use of parental, custodial, or official authority over a child less than fifteen (15) years of age;

"Force" means compulsion by the use of physical power or violence and shall be broadly construed to accomplish the purposes of the Sexual Offense Law.

T.C.A. § 39–2–602(1), (3) (1982).

The substantive evidence in this record is lacking to show that the defendant used any force or coercion to accomplish sexual intercourse with his seventeen-year-old daughter. As indicated in our review of the victim's testimony, she affirmatively testified that the defendant used no force, threats or other language to induce her to have sexual intercourse with him. She also conceded that she offered no resistance.

The State, in attempting to document that force was used, argues that the evidence shows that the defendant pulled the victim towards him in the kitchen and that she pushed him back, and that he pushed her, although "kindly, back to the bedroom." However, the State's references here relate to the testimony of Detective Seavers when he read into the record the victim's statement of what she had told him about the incident.

■ In sex cases, as an exception to the hearsay rule, a victim's statements to an-

---

1. The defendant and his wife were divorced the     day before the defendant's trial.

other about the incident are admissible as corroborative or confirmatory of the victim's credibility, but such fresh complaint evidence cannot serve as substantive evidence to prove the truth of the statements. *See Phillips v. State,* 28 Tenn. 246 (1848); *King v. State,* 210 Tenn. 150, 357 S.W.2d 42 (1962); *State v. Williams,* 598 S.W.2d 830 (Tenn.Cr.App.1980); *Conboy v. State,* 2 Tenn.Cr.App. 535, 455 S.W.2d 605 (1970); *see also D. PAINE,* Tennessee Law of Evidence, §§ 88, 220.

In *Phillips v. State, supra,* our Supreme Court, in discussing the admissibility of fresh complaint evidence in sex cases, set out the basis for the introduction of this type of evidence:

> It is certainly true that proof of the particulars of the complaint made by the injured party cannot be admitted as original evidence to prove the truth of the statements, or to establish the charge made against the prisoner, because not made in his presence, and, likewise, because the ordinary tests which the law has provided for the ascertainment of truth are wanting, viz., the sanction of a judicial oath, and the opportunity for cross-examination. And if this be the proper meaning and extent of the rule as laid down in the authorities last referred to, it is unquestionably correct. Such evidence is only admissible in confirmation of the witness, or to repel the presumption that her statement is a fabrication.

28 Tenn. at 249.

Thus, it follows that since the fresh complaint evidence adduced from Detective Seavers cannot serve as original evidence as to the issue of force or coercion, then we are left with no substantive evidence to show these elements as required for a rape conviction.

Accordingly, we find merit to the defendant's complaint that there is insufficient evidence to support his conviction for rape.

Next, the defendant says that the trial court erred in allowing into evidence the statements, contained in the victim's report to Detective Seavers, that the defendant had molested her by touching and feeling "at least" ten or fifteen times before.

■ Evidence can be admissible to show prior sexual misconduct by a defendant against the same victim. *Wilkerson v. State,* 208 Tenn. 666, 348 S.W.2d 314 (1961); *Sanderson v. State,* 548 S.W.2d 337 (Tenn.Cr.App.1976). However, such evidence must be competent, and had the victim testified about these prior incidents, then her report to Detective Seavers about these incidents would have been admissible as confirmatory of her credibility. Since she did not so testify, then these statements to Detective Seavers were hearsay and should have been excluded.

At any rate, given the overwhelming evidence showing the defendant's guilt of incest, we find this error to be harmless. It did not affect the results of the trial. T.R. A.P. 36(b); Tenn.R.Crim.P. 52(a).

In another issue, the defendant alleges error in the trial court's failure to grant his special request for an instruction regarding the law on accomplice testimony.

■ In incest cases if a victim consents to the crime, then such victim is an accomplice, and a conviction cannot be had on the victim's unsupported testimony. *Scott v. State,* 207 Tenn. 151, 338 S.W.2d 581 (1960); *Shelly v. State,* 95 Tenn. 152, 31 S.W. 492 (1895).

■ As we have previously stated, the evidence does not show the defendant utilized any force or coercion in his sexual molestation of the victim. The victim's testimony suggests that she consented to the crime. Therefore, the trial court should have given the jury a charge on the law pertaining to accomplice testimony.

Nonetheless, we do not see that this error would rise to the level of being reversible error. The competent evidence in this record shows beyond a reasonable doubt that the defendant had sexual intercourse with his daughter. Further, the testimony of Donnie Thomas to the effect that the defendant admitted his incestuous act was more than adequate to corroborate the victim's testimony. Under these circumstances, we are satisfied that the failure to give

this requested charge did not affect the jury's verdict. Like our ruling on the previous issue, we find this error harmless and non-prejudicial.

In his final issue, the defendant claims error in the trial court's failure to grant his special requests for instructions as to certain alleged lesser offenses of rape. Given our reversal of the defendant's rape convictions, there is no necessity to rule on this issue.

The defendant's conviction for rape is reversed and that charge is dismissed. His conviction of incest is affirmed.

JONES and REID, JJ., concur.