IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
August 15, 2001 Session

## STATE OF TENNESSEE v. RANDALL LLOYD HILL

**Appeal from the Circuit Court for Cheatham County**
**No. 12439     Robert E. Burch, Judge**

---

**No. M2000-01731-CCA-R3-CD - Filed October 8, 2001**

---

On July 18, 1997, the Defendant, Randall Lloyd Hill, was convicted of one count of incest. After a sentencing hearing, the trial court imposed a sentence of five years to be served in the Department of Correction. In this appeal as of right, the Defendant argues that (1) his incest conviction subjected him to double jeopardy, (2) he was convicted solely on uncorroborated accomplice testimony, (3) the trial court erred in allowing inappropriate opinion testimony from a child abuse investigator, and (4) the Defendant was prejudiced by the prosecutor's improper comments regarding the Defendant's decision not to testify. Because we conclude that the prosecutor improperly commented on the Defendant's election not to testify, we reverse the Defendant's conviction and remand the case for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; Remanded**

DAVID H. WELLES, J., delivered the opinion of the court, in which JOE G. RILEY and JAMES CURWOOD WITT, JR., JJ., joined.

Michael J. Love, Clarksville, Tennessee, for the appellant, Randall Lloyd Hill.

Paul G. Summers, Attorney General and Reporter; Elizabeth T. Ryan, Assistant Attorney General; Dan Alsobrooks, District Attorney General; and Robert Wilson, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

During Thanksgiving weekend in 1992, Kathy White's family gathered at her home in Cheatham County for a family reunion. Approximately twenty family members attended the reunion at the White home. The house did not have beds for everyone so many family members slept on the floor throughout the house. On the night of November 26, the Defendant, Ms. White's brother, decided to sleep outside in a large custom van equipped with a space heater and an electric blanket.

Ms. White's fourteen year old daughter, the victim, also slept in the van that night. As the victim was going to sleep, the Defendant began rubbing her arms and breasts stating that he would warm her up. The victim asked the Defendant to stop, but he would not. The Defendant then began to rub the victim's stomach, unzipped her pants and penetrated her vagina with his finger. This continued for about an hour, until the Defendant fell asleep and the victim went back inside the house.

The victim did not inform anyone of the Defendant's actions until two months later when she discussed the abuse with her best friend; however, when confronted by school officials, she denied any abuse. The victim continued to deny that she was abused during the next two years as she moved in and out of treatment facilities due to drug and behavior problems as well as one attempted suicide.

After Thanksgiving of 1992, the victim's grades dropped dramatically and she began skipping school and using drugs. Prior to that, the victim was an A and B student with no history of behavior problems. In 1994, during a therapy session at a treatment center, the victim admitted that the Defendant had sexually abused her.

During the investigation into the allegations made by the victim, the Defendant was questioned near his home in Illinois and denied any wrongdoing. On May 29, 1996, the Defendant was charged with one count of rape, one count of sexual battery, and one count of incest. The sexual battery count was dismissed by the trial court, the jury acquitted the Defendant of the rape charge, and the jury found the Defendant guilty of incest.

## DOUBLE JEOPARDY

The Defendant first contends that he faced the threat of multiple punishments for the same offense in violation of the double jeopardy clause of the Fifth Amendment to the United States Constitution and Article I, section 10 of the Tennessee Constitution. Specifically, the Defendant argues that by charging him with both rape and incest, the State was given two opportunities to convict the Defendant of the same crime.

The double jeopardy clauses of the Fifth Amendment to the United States Constitution and Article I, section 10 of the Tennessee Constitution both protect against a second prosecution for the same offense after conviction, a second prosecution for the same offense after an acquittal, and multiple punishments for the same offense. State v. Mounce, 859 S.W.2d 319, 321 (Tenn. 1993). Double jeopardy prohibits the State from "punishing twice, or attempting a second time to punish criminally, for the same offense." Metropolitan Government of Nashville and Davidson County v. Miles, 524 S.W.2d 656, 660 (Tenn. 1975). The Defendant argues that the indictment he was tried under violated double jeopardy because it exposed him to multiple punishments for the same offense in that it charged him with both rape and incest arising out of the same sexual act.

We first note that the Defendant was acquitted of the rape charge, and received only one punishment for the incest charge. Therefore, he has not received multiple punishments for the same offense. However, even if the threat of multiple punishments was sufficient to establish a double

jeopardy violation, our case law clearly establishes that rape and incest are not considered the "same offense" for double jeopardy purposes.

In State v. Denton, 938 S.W.2d 373 (Tenn. 1996), our supreme court established a framework for determining whether a defendant has received multiple punishments for the "same offense." The reviewing court must consider (1) the statutory elements of the offenses, (2) the evidence used to prove the offenses, (3) whether there were multiple victims or discrete acts, and (4) the purposes of the respective statutes. Id. at 381.

In State v. Beauregard, 32 S.W.2d 681 (Tenn. 2000), our supreme court recently undertook the Denton analysis to affirm a defendant's conviction for rape and incest arising out of the same evidence. In doing so, the court stated that

> [a] comparison of the statutory elements of rape and incest demonstrates that the elements are dissimilar. Rape, unlike incest, requires non-consensual sexual penetration accompanied by force or coercion; incest, unlike rape, requires that the victim be [related to] the defendant, regardless of whether the victim consented.

Id. at 683. The court noted that while the evidence used to establish the sexual penetration element of both rape and incest will be the same, the evidence required to establish the other unique elements of each crime will be different. Id. It is also clear that the policy objectives of the legislative prohibition on rape and incest are different. Id. at 684. The only factor of the Denton analysis that weighs in favor of rape and incest being the same offense is that the offense involved a single victim and a single act. The Beauregard court found that factor alone insufficient to establish rape and incest as the "same offense" for double jeopardy purposes. Beauregard, 32 S.W.2d at 684. Accordingly, we find the Defendant's double jeopardy challenge to be without merit.

### UNCORROBORATED ACCOMPLICE TESTIMONY

The Defendant also argues that he was convicted on the basis of uncorroborated accomplice testimony. The Defendant contends that, because the jury acquitted him of the charge of rape, the victim must have been a willing participant in the incest. We must disagree.

In Tennessee, a conviction may not be based solely upon the uncorroborated testimony of an accomplice. See State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2000); State v. Bigbee, 885 S.W.2d 797, 803 (Tenn.1994); Monts v. State, 214 Tenn. 171, 379 S.W.2d 34, 43 (Tenn.1964). Our supreme court has described the nature of this requirement as follows:

> [T]here must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. This corroborative evidence may be direct or entirely circumstantial, and

it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. It is not necessary that the corroboration extend to every part of the accomplice's evidence.

Bigbee, 885 S.W.2d at 803 (quoting State v. Gaylor, 862 S.W.2d 546, 552 (Tenn.Crim.App.1993)). Whether sufficient corroboration exists is a determination for the jury. See Shaw, 37 S.W.3d at 903; Bigbee, 885 S.W.2d at 803.

Furthermore, in incest cases, if a victim consents to the crime, then such victim is an accomplice, and a conviction cannot be had on the victim's unsupported testimony. See State v. Wadkins, 754 S.W.2d 95, 99; Scott v. State, 207 Tenn. 151, 338 S.W.2d 581 (1960); Shelly v. State, 95 Tenn. 152, 31 S.W. 492 (1895).

In the present case, there is no evidence that the victim was a willing participant in the incest. The trial judge found as a matter of law that the victim was not an accomplice based upon the complete lack of evidence that would support an inference that the victim was a willing participant in the sexual act. Despite that finding, the trial judge charged the jury concerning the definition of an accomplice and the necessity of corroborating evidence to support the testimony of an accomplice.

We also find no evidence that the victim was an accomplice to the Defendant's act of incest. The Defendant's contention that his conviction was based solely on uncorroborated accomplice testimony is without merit.

## OPINION TESTIMONY

The Defendant also contends that the trial court erred by allowing Officer Floyd Duncan, the child abuse investigator, to testify regarding the victim's consistency and the victim's symptoms of child abuse syndrome.

The admissibility of opinion testimony from lay witnesses is governed by Rule 701 of the Tennessee Rules of Evidence, which states in relevant part:

If a witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are
(1) rationally based on the perception of the witness and
(2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.

Tenn.R.Evid. 701. As with most other evidentiary questions, the admissibility of opinion testimony is a matter which largely rests within the sound discretion of the trial court. See State v. Ballard, 855 S.W.2d 557, 562 (Tenn.1993).

Officer Duncan first testified that the victim's comments made directly to him concerning the abuse by the Defendant were all consistent. Officer Duncan was not giving an opinion, but rather, stating as a fact, that the statements given to him by the victim were consistent. However, even if we construe Officer Duncan's testimony as opinion testimony, it was an opinion based on his perception of the victim's statements introduced in order to give the jury a clear understanding of the thoroughness of Officer Duncan's investigation as contemplated by Rule 701.

The Defendant further contends that the trial court erred in allowing Officer Duncan to testify regarding the victim's symptoms of child abuse syndrome. During his testimony the following exchange occurred between the District Attorney and Officer Duncan:

Q:    All right. Now, are you familiar with some of the difficulties [the victim] has had since November of 1992, leading up through the end of 1994 or early 1995?

A:    (No audible response)

Q:    Run-a-away--

A:    Yes.

Q:    –drugs?

A:    As a matter of fact, the early case review that I did was based on her being, as I recall, hospitalized. That, certainly, was the initial contact that Social Services had with her. The mounting difficulties that she had, even from family members I talked with about how her behavior changed, did not seem extraordinary to me, knowing that this is something, in my experience, I run into time and time again, where kids get disruptive, they get angry, they feel out of control. They turn to drugs. They turn to alcohol. They do many behaviors that wind up getting them in trouble.

Q:    Were there any intentional acts on your part or on Barbara Wallace's part to delay this investigation for any reason?

A:    No, sir.

The Defendant made no objection at trial to Officer Duncan's statement, therefore, any objection to the statement on appeal has been waived. Accordingly, we find that the trial court did

not abuse its discretion by allowing Officer Duncan's testimony, especially in the absence of any objection made by the Defendant.

## IMPROPER ARGUMENT BY PROSECUTION

Finally, the Defendant contends that the prosecutor made improper remarks during closing arguments about the Defendant's decision not to testify. Trial courts have substantial discretionary authority in determining the propriety of final argument. Although counsel is generally given wide latitude, courts must restrict any improper commentary. See Sparks v. State, 563 S.W.2d 564, 569 (Tenn.Crim.App. 1978). Closing arguments must be temperate, must be based upon evidence introduced during trial, and must be relevant to the issues at trial. See State v. Sutton, 562 S.W.2d 820, 823 (Tenn. 1978).

Most restrictions during final argument are placed upon the State due to the important role the prosecutor plays as a representative of an impartial sovereign. See Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1214 (1935). The State should refrain from argument designed to inflame or incite the emotions of the jury and should restrict its commentary to the evidence and issues at trial. See Coker v. State, 911 S.W.2d 357, 368 (Tenn.Crim.App. 1995). The State should not comment unfavorably upon defense counsel or the trial tactics employed by the defense at trial. See id.; see Dupree v. State, 410 S.W.2d 890, 892 (1967).

A prosecutor is absolutely prohibited from commenting upon a decision made by the defendant not to testify at trial. See Griffin v. California, 380 U.S. 609, 612, 85 S.Ct. 1229, 1232, 14 L.Ed.2d 106 (1965). Tennessee precludes such commentary, both by its constitution and by legislative enactment. See Tenn. Const. Art. I § 9; Staples v. State, 89 Tenn. 231, 231, 14 S.W. 603, 603 (1890); Tenn. Code Ann. § 40-17-103. When a prosecutor improperly comments on a defendant's decision not to testify, an appellate court must consider whether the improper conduct could have affected the verdict in a way that prejudiced the defendant. See Coker, 911 S.W.2d at 368, (quoting Harrington v. State, 385 S.W.2d 758, 759 (1965)). The factors to aid us in making this determination are set forth in Judge v. State, 539 S.W.2d 340, 344 (Tenn.Crim.App. 1976). The Judge factors, later adopted by our supreme court in State v. Buck, 670 S.W.2d 600, 609 (Tenn. 1984), require this court to consider:
> (1) the conduct complained of, viewed in light of the facts and circumstances of the case;
> (2) the curative measures undertaken by the Court and the prosecutor;
> (3) the intent of the prosecutor in making the improper statement;
> (4) the cumulative effect of the improper conduct and any other errors in the record; and
> (5) the relative strength or weakness of the case.

Judge, 539 S.W.2d at 344.

During the prosecution's closing argument, the Assistant District Attorney repeatedly stated that "the defendant has a constitutional right not to testify." The prosecutor's closing argument in

this regard culminated with his comment that "the defendant has a right not to testify, and he's chosen to exercise that, and that's fine, but that tells you a lot about the kind of individual you're dealing with, . . . ."

Initially, we note that the Defendant made no objection to the prosecutor's repeated references to the Defendant's failure to testify. However, under limited circumstances this Court may consider an issue not formally preserved for appeal. See Tenn.R.Crim.P. 52(b). Under the applicable standard, the error must constitute "plain error," affecting a "substantial right" of the accused. See State v. Adkisson, 899 S.W.2d 626, 639 (Tenn.Crim.App.1994). The determinative factors regarding "plain error" are:
> (1) the record must clearly establish what occurred in the trial court;
> (2) a clear and unequivocal rule of law must have been breached;
> (3) a substantial right of the accused must have been affected;
> (4) the accused did not waive the issue for tactical reasons; and
> (5) consideration of the error is "necessary to do substantial justice."

Id. at 641-42.

In the present case, the record clearly indicates that the prosecutor commented several times on the Defendant's constitutional right against self-incrimination, and that a consideration of those comments in light of the factors set forth in Judge is necessary to ensure substantial justice.

The first Judge factor requires us to consider the prosecutor's comments in light of the facts and circumstances of the case. See Judge, 539 S.W.2d at 344. The Defendant was accused of rape and incest. The victim was the only prosecutorial witness with any first hand knowledge of what occurred between the Defendant and the victim during Thanksgiving of 1992. This Court cannot say that the prosecutor's references to the Defendant's failure to testify and tell his version of the events did not affect the jury's verdict. It is reasonable to assume that such comments could have the effect of removing the burden of proof beyond a reasonable doubt from the prosecution and requiring the Defendant to explain why he is not guilty. This factor weighs in favor of the Defendant.

No curative measures were undertaken by the trial court or the prosecutor in the present case. This factor also weighs in favor of the Defendant.

In the present case, the third Judge factor, the intent of the prosecutor in making the improper statement, is intertwined with the final two factors: the cumulative effect of the improper conduct, any other errors in the record, and the relative strength or weakness of the case. See Judge, 539 S.W.2d at 344. As stated above, the victim's testimony and her behavioral and emotional decline were the only evidence presented against the Defendant. The case was not one where physical or DNA evidence of abuse was available. Therefore, given the relative weakness of the prosecution's case, one must assume that the prosecutor's improper comments were made with the intent of influencing the jury in order to secure a conviction based in part on the fact that the Defendant did not take the stand and deny the accusation. After he had already mentioned to the jury three times

that the Defendant had exercised his right not to testify, the prosecutor appeared to make his point quite obvious when he stated: "the defendant has a right not to testify, and he's chosen to exercise that, and that's fine, but that tells you a lot about the kind of individual you're dealing with, . . . ."

Over one hundred years ago, our supreme court made the following observation about a defendant's right not to testify at his trial:

> This provision is in accord with the bill of rights, wherein it is provided that in all criminal prosecutions the defendant "shall not be compelled to give evidence against himself . . . ." The question here presented has arisen many times, and the decisions of the courts have been practically unanimous in holding that no argument to the jury based upon the failure of a defendant to testify is permissible.

Staples v. State, 89 Tenn. 231, 14 S.W. 603 (1890).

Accordingly, we find that the prosecutor's improper comments concerning the Defendant's failure to testify improperly prejudiced the Defendant by penalizing him for exercising his constitutional right to remain silent. Therefore, the Defendant's conviction for incest is reversed.

## CONCLUSION

After a thorough review of the record, we conclude that the improper statements of the prosecutor during closing arguments constitute reversible error. Accordingly, the judgment of the trial court is reversed, and this case is remanded for a new trial.

 

_____
DAVID H. WELLES, JUDGE